HENRY A. POLLAK, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 50931.) (Action No. 1.)

DAVIS CONSTRUCTION CORPORATION, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 53297.) (Action No. 2.)

Third Department, December 23, 1975

*Samuel Goldstein & Sons (Michael Goldstein* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Ruth Kessler Toch* of counsel), for State of New York.

*Koppel Sommer Lesnick & Martone, P. C. (Bernard Sommer* of counsel), for respondent-appellant.

KANE, J. Charlotte Street runs in a generally north-south direction through its intersection with tracks of the Long Island Rail Road in the Town of Oyster Bay, Nassau County. Abutting this street on its westerly side, as one approaches from the south, are adjoining lands of the County of Nassau, the claimant Davis Construction Corporation (hereinafter Davis) and the claimant Henry A. Pollak. Located closest to the point of intersection, Pollak's parcel also adjoins the railroad property on the north and has the larger portion of the "L" shaped Davis property as its westerly boundary. In order to eradicate the then existing grade intersection by depressing the level of Charlotte Street beneath the railroad tracks, the

State appropriated certain property from Davis on January 2, 1969 and from Pollak on March 21, 1969 pursuant to the Grade Crossing Elimination Act (L 1928, ch 678, as amd; now Transportation Law, art 10). These takings included strips, in fee, from each claimant along the entire length of their respective frontages on Charlotte Street and, in Pollak's case, also included a permanent easement over an additional strip to the west of the fee taking for the erection of an embankment retaining wall. Certain other permanent and temporary easements were also appropriated from Pollak. As a result, both claimants' remainders sustained a deprivation of access and their appeals raise a common issue concerning the proper measure of consequential damages to which they are entitled. The Court of Claims concluded that the deprivation was temporary and noncompensable under the circumstances presented. The State cross-appeals from the award made to Pollak insofar as it was predicated upon a change in the former highest and best use of his property.

Treating the State's appeal first, it appears that Pollak operated a fertilizer plant on his premises as a prior nonconforming use and employed a railroad siding from the adjoining tracks of the Long Island Rail Road in connection with this business. As part of its grade elimination work, the State appropriated a permanent easement over a related segment of Pollak's land and altered this siding with the consequence that, as reconstructed, its capacity to accept railroad cars was diminished. Furthermore, this aspect of the project also necessitated the removal of certain piping and dock space so that Pollak was unable to use the siding for a lengthy period of time during construction. The reconstructed siding was itself later removed, apparently for nonuse. Upon this state of facts, we agree with the findings and conclusion of the trial court that Pollak's property lost its former legal nonconforming use and its capability to be operated as a fertilizer plant by reason of the State's appropriation. Even if we accepted the State's contention that the legality of that prior use was not affected by an involuntary discontinuance, the finding of a change in the highest and best use would still be warranted for the reconstructed railroad siding was insufficient to support the continuation of that business.

Claimants' arguments concerning the proper measure of consequential damages are directed at the timing and method adopted by the State to afford their remainder parcels with

access to Charlotte Street. The construction plans contemplated the opening of a detour road to facilitate the flow of vehicular traffic while the work of depressing the grade of Charlotte Street was in progress. As relevant, this detour was to proceed from the westerly side of Charlotte Street in a northerly direction over the lands of Nassau County, the appropriated Davis fee, and a temporary easement through Pollak's remainder, before crossing the railroad tracks. The plans also noted that this temporary detour would not be entirely eliminated upon completion of the project, but would be terminated on the appropriated Davis fee and endure as a service road to supply Charlotte Street access to the Davis and Pollak remainders. Without this arrangement both properties would have been landlocked for it is plain that the appropriations hereinbefore mentioned would not have admitted passage over that which was taken, either by implication or physical possibility, and neither remainder bordered on any other accessible street. Although the State constructed the detour as planned, with only a minimal physical interruption in claimants' ability to reach Charlotte Street, it took no formal steps to acquire an interest in the requisite Nassau County lands before December of 1972 and it was not until October of 1973 that the State finally obtained that property for grade crossing elimination purposes. Greatly simplified, claimants invoke the theory of *Wolfe v State of New York* (22 NY2d 292), for the proposition that the State was impermissibly attempting to minimize its liability for consequential damages by this subsequent appropriation, whereas the trial court found the situation closer to that presented in *Windham v State of New York* (34 AD2d 590, mot for lv to app den 27 NY2d 481), and concluded that claimants' loss of legal access was but temporary and noncompensable.

In our view, this conflict may be resolved without recourse to the extensive analysis undertaken by the trial court. Prior to the appropriation each claimant had a legal right of access to Charlotte Street but, as matters now stand, their only means of reaching that street is by crossing over a corridor of land owned in fee by the State for grade crossing elimination purposes. We are not here concerned with the question of the suitability of that access, but with the more basic issue of whether claimants have any right of access whatsoever to Charlotte Street. We note that they have not been expressly granted any such right and that this "service road" has not

been dedicated as a public street or highway. Unlike what is permitted where land is acquired for State highway purposes (cf. Highway Law, § 10, subd. 24-d), the Grade Crossing Elimination Act contains no specific authorization for the re-establishment of private access to a public road and we cannot say that the present corridor physically forms a part of any existing or proposed highway, road or street (L 1928, ch 678, § 5, subd 12, now Transportation Law, § 228, subd 27). Accordingly, it would seem that this "service road" is merely property owned in fee by the State for grade crossing elimination purposes which happens to abut the remainder parcels of Davis and Pollak. As such, it does not appear that their unappropriated lands have any private right of access thereto (3 Nichols, Eminent Domain [3d ed], § 10.221, subd 5, p 381). Therefore, the only remaining consideration is the computation of consequential damages in light of our conclusion that the remainders no longer have legal access to any public road. Had the Pollak siding not been removed, it is conceivable that his remainder would have a value of a sort to those who could approach it by rail and a remittal would be indicated for additional proof on that matter. However, it is plain from the testimony of claimants' expert appraisers, which evidence was not refuted by the State, that the unappropriated lands have no value without legal access. Accordingly, since there is no contention that the trial court erred in arriving at the proper valuation of these properties before the appropriations, there is no necessity to remit. The judgments in claimants' favor should be modified by increasing the respective awards by a sum equal to the difference between the present awards and the before values assigned by the trial court.

The judgment in Action No. 1 should be modified, on the law and the facts, by increasing the award to $594,100, together with appropriate interest, and, as so modified, affirmed, with costs to claimant. Judgment in Action No. 2 should be modified, on the law and the facts, by increasing the award to $341,450, together with appropriate interest, and, as so modified, affirmed, with costs to claimant.

SWEENEY, J. P., KOREMAN and MAIN, JJ., concur; LARKIN, J., dissents and votes to affirm on the opinion of the Judge of the Court of Claims.

Judgment in Action No. 1 modified, on the law and the facts, by increasing the award to $594,100, together with

appropriate interest, and, as so modified, affirmed, with costs to claimant.

Judgment in Action No. 2 modified, on the law and the facts, by increasing the award to $341,450, together with appropriate interest, and, as so modified, affirmed, with costs to claimant.