*811 OPINION OF THE COURT
Gerard M. Weisberg, J.
In these appropriation claims, both sides move for partial summary judgment on the issue of whether the taking has landlocked the remainder of claimant’s property. We hold that it has not.
On the taking date, July 27,1989, claimant, Carillion Realty Corp., owned five lots in New Rochelle, New York. Lots 4 and 8 fronted New Rochelle Creek, and all were connected by Dragonwyck Lane, a private road, to Davenport Avenue, a public thoroughfare. William Michaelis also owned three lots which lay on either side of Dragonwyck Lane and between claimant’s lots and Davenport Avenue.
Prior to the taking, the Power Authority of the State of New York (NYPA) decided to acquire property in Westchester County for the "Sound Cable Project” — a 345,000 volt transmission line which now runs underground and under Long Island Sound and connects Con Edison’s system in Westchester County with that of the Long Island Lighting Company in Nassau County.
As early as April 1987, claimant was made aware that part of its property was necessary for the construction of this project and negotiations with respect to the appropriation commenced. By resolutions dated February 28, 1989, the Trustees of NYPA authorized the appropriation of the three Michaelis lots, claimant’s lot No. 6 and Dragonwyck Lane from Davenport Avenue to the remainder of claimant’s property.[1] Because this would have landlocked claimant’s nontaken lots, the proposed taking map with respect to the Michaelis property contained a right-of-way in favor of claimant, its successors and assigns. In addition, on June 28, 1989, NYPA offered claimant a written access agreement.
Briefly, these two documents provided that, as of the date of the taking, claimant would have an easement over the former Michaelis property for access, and NYPA would construct a new road to facilitate same. In addition, pending the construction of this road, claimant was offered a permit or temporary easement to continue using Dragonwyck Lane. The only condition NYPA attached was that claimant agree to indemnify NYPA should claimant’s use injure anyone. Claimant refused to accept the easement or to execute the agreement.
*812 Because of this refusal, and presumably not to cloud its own title, NYPA redrafted the Michaelis map to take out the easement. On July 27, 1989, this map and the map taking claimant’s property were filed effectuating the appropriation. Nevertheless, both sides have acted as if the agreement were in effect, to wit, claimant was allowed to and did use Dragonwyck Lane for access until the completion of the new private road/driveway which it thereafter has used.
A claimant is entitled to compensation for property taken, and if less than all has been appropriated, damages caused by the taking to the remainder. A loss of access is one type of damage which may reduce the property value of the remainder and entitle the condemnee to compensation therefor. (See, e.g., Matter of County of Suffolk [Arved, Inc.], 63 AD2d 673.) The award of damages is measured and fixed as of the time of the taking. (Wolfe v State of New York, 22 NY2d 292.)
Thus, where a taking would landlock the remainder, to avoid such result and the payment of compensation therefor, as of the time of the taking the condemnor must provide substitute access. (2A Nichols, Eminent Domain § 7.12 [4].) Such must be by means of permanent legal right. (Wolfe v State of New York, 22 NY2d 292, supra.) This requires either the dedication of a public highway to the remainder (Van Valkenburgh v State of New York, 131 AD2d 903), or if by private road, a permanent easement thereupon.[2] (Wolfe v State of New York, 22 NY2d 292, supra.) Where such is not done as of the taking, the providing of such access thereafter is ineffective. (Wolfe v State of New York, 22 NY2d 292, supra.)
Claimant asserts that its remainder is landlocked because, although it continuously has had access via Dragonwyck Lane during the construction and via the defendant’s private road/ driveway thereafter, it does not have legal access, to wit, a permanent easement over NYPA’s property. In fact, claimant points out, defendant could terminate the access tomorrow by simply closing off its driveway
While practical access is not legal access, and while the test is access as of the taking, here claimant was offered legal access at that time and refused it. Although we have been *813 directed to no case exactly on point, in Wolfe v State of New York (22 NY2d 292, supra) the Court of Appeals refused to allow the providing of posttaking access because "the State had at no time granted, or offered an instrument which would have granted, to the claimant 'in perpetuity the right of access.’ ” (22 NY2d, at 294 [emphasis added].) The obvious implication being that if an easement had been offered, as it was here, even if rejected, legal access would have been provided. This, of course, is no more than commonsense equity. One cannot be offered easements, reject them for no reason, and then claim damages for a lack of access the easements would have provided. (Imperator Realty Co. v Tull, 228 NY 447, 457 [Cardozo, J., concurring].)
As its next argument, claimant asserts that defendant did not offer legal access because the Trustees of NYPA never authorized an easement; and if they did, it was invalid for a lack of authority. With respect to the first prong of this argument, defendant has submitted both the resolution of NYPA and the proposed taking map for the Michaelis property, executed by NYPA, which authorized and provided for a permanent right-of-way in claimant’s favor. We therefore find it was authorized in fact.
As to the second prong, claimant points out that while Highway Law § 10 (24-d) specifically authorizes the taking of property and the conveyancing thereof to provide substitute access, the absence of a corresponding provision in the Public Authorities Law implies, according to claimant, a lack of authority, citing Pollak v State of New York (50 AD2d 201, affd on other grounds 41 NY2d 909) and Wineburgh v State of New York (37 Misc 2d 586, mod 20 AD2d 961).
First, it is questionable whether claimant has standing to raise this argument. It was Mr. Michaelis’ property and rights which were taken and given to claimant. If the taking and granting were unauthorized, it is Mr. Michaelis who has been damaged and should complain. Be that as it may, we reject claimant’s arguments on the merits for two reasons: NYPA does not need statutory authority to provide substitute access; and if it does, such exists in the Public Authorities Law.
While there is language in both Pollak v State of New York (50 AD2d 201, affd on other grounds 41 NY2d 909, supra) and Wineburgh v State of New York (37 Misc 2d 586, mod 20 AD2d 961, supra) which supports the proposition that statutory authority is necessary before an access easement can be *814 granted, in both cases it is dictum: for in both, the access given was not indefeasible and/or provided posttaking and therefore was insufficient as a matter of law whether authorized by statute or not.
The requirement to pay just compensation for public taking derives, of course, from the United States and New York State Constitutions. (US Const 5th Amend; NY Const, art I, § 7.) The right to provide substitute access in order to reduce taking damages is said to derive from the common law and to be inherent in the power to appropriate. (Cuglar v Power Auth., 4 Misc 2d 879, affd 4 AD2d 801, affd without opn 3 NY2d 1006.) Thus, prior to the passage of Highway Law § 10 (24-d), which explicitly authorizes takings to provide substitute access, the Attorney-General had opined that it was unnecessary as the power already existed by virtue of the common law. (1959 Opns Atty Gen 84.) Therefore the lack of a provision analogous to Highway Law § 10 (24-d) in the Public Authorities Law did not deny NYPA the authority to grant claimant an easement over the Michaelis property for substitute access.
Assuming arguendo a statutory basis is required, it may be found in Public Authorities Law § 1007 (10). That provision states in pertinent part that "[t]he authority may determine what real property is reasonably necessary for the construction or operation of any project authorized by this title including transmission facilities.” It has been held in other contexts that appropriations to provide substitute access are public takings within the meaning of the Constitution and are reasonably necessary to the condemnor’s purpose. (Matter of Watkins v Ughetta, 273 App Div 969, affd 297 NY 1002; Cuglar v Power Auth., 4 Misc 2d 879, affd 4 AD2d 801, affd without opn 3 NY2d 1006, supra.) Therefore, since takings for substitute access are reasonably necessary and Public Authorities Law § 1007 (10) authorizes reasonably necessary takings, statutory authority exists for the granting of the easements.
Next, in its reply memorandum, and almost as an afterthought, claimant asserts that the reservation of the right-of-way in the taking map with respect to the Michaelis property would have been ineffective to grant it rights under the rule of Matter of Estate of Thompson v Wade (69 NY2d 570) because it was a stranger to the conveyance.[3] While claimant *815 may be right,[4] we do not think it changes the result. This is because, prior to the taking, the written access agreement NYPA offered claimant provided for access that would only "expire when Carillion accepts a grant of easement.” (Emphasis added.) Claimant has not disputed this offer nor stated why it refused to accept it.
Lastly, claimant argues that the offer of substitute access was ineffective because it violates the rule that a condemnee cannot be forced to go beyond its property to cure a lack of access. (See, e.g., Matter of County of Suffolk [Arved, Inc.], 63 AD2d 673, supra.) Claimant confuses a condemnee’s duty to mitigate damages with a condemnor’s right to provide substitute access. Where access has been destroyed or impaired and the condemnee can reestablish it, it may do so, or may have been deemed to have done so. This is no more than its duty to mitigate damages. One measure of its damages are then the costs to cure the lost access (provided the cost is not greater than the value of the property). (4A Nichols, Eminent Domain § 14A.04.) Where, however, the cure would require construction off the condemnee’s property, it is neither required nor deemed to have done so because, as a matter of practical reality, a condemnee has no right to engage in construction on property which it does not own.
All of that, however, is irrelevant to the condemnor which may, if it elects, provide by condemnation and/or construction new access off the condemnee’s property. As indicated above, this is a common-law and statutory right of a condemnor and exists independently of a condemnee’s duty to mitigate damages. (Highway Law § 10 [24-d]; Public Authorities Law § 1007 [10]; Van Valkenburgh v State of New York, 131 AD2d 903, supra; see generally, 4A Nichols, Eminent Domain § 14A.04.)
NYPA’s having, as of the date of the taking, appropriated property and constructed a private road thereon, under the authority of the common law and Public Authorities Law § 1007 (10) and over which it offered claimant a permanent *816 right-of-way for access, we find that claimant’s property is not landlocked, nor has it ever been so by virtue of the taking. We therefore grant NYPA partial summary judgment to that effect.[5]

. The Trustees also authorized the taking of a temporary easement over part of claimant’s remainder for construction of the Sound Cable Project.

. Where substitute access is to be provided by the construction of a new road, as a practical necessity, a temporary easement until the construction has been completed has been held acceptable. (Van Valkenburgh v State of New York, 131 AD2d 903, supra.)

. The long-accepted rule in this State holds that a reservation of an interest in a deed in favor of a third party, a so-called "stranger to the deed,” does not create a valid interest in such party. (Matter of Estate of Thompson v Wade, 69 NY2d 570, supra.)

. Had the Michaelis’ taking map been a voluntary deed, claimant would be right that the reservation of the right-of-way therein would have been ineffective. Whether the result is the same here is unclear inasmuch as the transfer was involuntary and the entity granting the easement and receiving the property was the same, to wit, NYPA. We have found no authority which answers this question.

. NYPA’s papers indicate that it is still willing to grant claimant the easement. We are conditioning this grant of partial summary judgment upon that understanding.