[857 NE2d 517, 824 NYS2d 196]

Lake George Associates, Appellant, v State of New York, Respondent. (Claim No. 104481.)

Argued September 7, 2006; decided October 19, 2006

**POINTS OF COUNSEL**

*Bond, Schoeneck & King, PLLC,* Albany (*Stuart F. Klein* of counsel), for appellant. I. The permanent driveway easements applied by the State of New York abutting the White and Tatko parcels did not provide the subject property with cross-vehicular access to those neighboring lands and/or legal access to and from Routes 9 and 149. (*Pollak v State of New York,* 41 NY2d 909; *Priestly v State of New York,* 23 NY2d 152; *Segar v State of New York,* 111 Misc 2d 1034; *Orchard Grove of Dutchess v State of New York,* 1 Misc 3d 810; *Matter of City of Syracuse Indus. Dev. Agency,* 5 AD3d 1114; *Matter of Albany County Airport Auth. [Buhrmaster],* 265 AD2d 720, 94 NY2d 758; *Fitch v State of New York,* 27 Misc 2d 108; *Kravec v State of New York,* 40 NY2d 1060; *Modica v Incorporated Vil. of Saltaire,* 202 AD2d 376; *Zeh v Karker,* 43 AD2d 881.) II. The doctrine of substitute condemnation is inapplicable in the instant action because substitute condemnation only applies to parcels which have been left without any access and landlocked by an appropriation. (*Van Valkenburgh v State of New York,* 131 AD2d 903; *KJC Realty v State of New York,* 69 Misc 2d 99, 32 NY2d 664; *Carillion Realty Corp. v State of New York,* 158 Misc 2d 810, 212 AD2d 660; *Wilson v Ford,* 209 NY 186.) III. Should the Court find that the subject property does not have legal access to Routes 9 and 149 as a result of the appropriation, the matter should be remitted to the Appellate Division for a finding of consequential damages. (*Campbell v State of New York,* 39 AD2d 615, 32 NY2d 952; *Matter of Saratoga Harness Racing v Williams,* 91 NY2d 639; *W.T. Grant Co. v Srogi,* 52 NY2d 496; *Matter of County of Schenectady [Pahl],* 194 AD2d 1004.)

*Eliot Spitzer, Attorney General,* Albany (*Michael S. Buskus, Caitlin J. Halligan, Daniel Smirlock* and *Peter H. Schiff* of counsel), for respondent. I. Permanent easements, appropriated by the State of New York from claimant and its neighbors, assured "legal access" via the driveways constructed over those easements. (*Van Valkenburgh v State of New York,* 131 AD2d

903; *National Biscuit Co. v State of New York,* 14 AD2d 729, 11 NY2d 743; *Raj v State of New York,* 124 AD2d 426; *Ross v State of New York,* 30 AD2d 681, 23 NY2d 807; *Rider v State of New York,* 192 AD2d 983; *Gengarelly v Glen Cove Urban Renewal Agency,* 69 AD2d 524; *Gilmore v State of New York,* 208 Misc 427; *Hatfield v Straus,* 189 NY 208; *People ex rel. Ackerman v Stover,* 138 App Div 237; *Greeley Sightseeing Co. v Riegelmann,* 119 Misc 84.) II. The takings in this case provided claimant with suitable access to the highway. (*Dohany v Rogers,* 281 US 362; *Brown v United States,* 263 US 78; *Cuglar v Power Auth. of State of N.Y.,* 4 Misc 2d 879, 4 AD2d 801, 3 NY2d 1006; *Ross v State of New York,* 30 AD2d 681, 23 NY2d 807; *KJC Realty v State of New York,* 69 Misc 2d 99, 32 NY2d 664; *Tobin Packing Co. v People,* 42 AD2d 82; *Van Valkenburgh v State of New York,* 131 AD2d 903; *Wolfe v State of New York,* 22 NY2d 292; *Pollak v State of New York,* 50 AD2d 201, 41 NY2d 909; *Windham v State of New York,* 34 AD2d 590, 27 NY2d 481.)

### OPINION OF THE COURT

CIPARICK, J.

We are asked to determine whether the State, in its appropriation of claimant's and its neighbors' land for the purpose of improving an abutting highway and reestablishing access pursuant to Highway Law § 10 (24-d), deprived claimant of a legal right of access to the public roads. We hold that the appropriation of land, under these circumstances, creates a legal, enforceable right of access to the driveways and turning lanes on the neighboring properties and to the public road, and thus that consequential damages are not warranted.

Lake George Associates (claimant) owns a shopping plaza on the southeast corner of US Route 9 and State Route 149 in the Town of Queensbury, Warren County. The property has a one-story commercial building that rents space to three outlet clothing stores and a pizzeria. Adjacent to claimant's property is a lot owned by nonparty David White to the south and a lot owned by nonparty Michael Tatko to the east. Prior to July 13, 1998, claimant's property had two 50-foot curb cuts that provided access to and from each respective highway. However, as part of a highway improvement project to create turning lanes and improve safety, the State appropriated land from claimant and its neighbors, White and Tatko.

On July 13, 1998, the State obtained a fee interest in the frontage strip of claimant's land, as indicated by Map No. 212,

Parcel No. 268, filed with the County Clerk, so that it could install turning lanes on both Routes 9 and 149 as well as construct a new sidewalk abutting the highways. The State also obtained permanent easements over claimant's land and that of its neighbors, Tatko and White.

The two permanent easements over claimant's property were filed under Map No. 212, Parcels Nos. 269 and 270,[1] with the Warren County Clerk's office. The easements read as follows:

> "A PERMANENT EASEMENT FOR DRIVEWAY
>
> "A permanent easement to be exercised in, on, and over the property above delineated and hereinafter described for the purpose of constructing thereon a driveway and appurtenances over and across all those pieces or parcels of property hereinafter designated as Parcel Nos. 269 and 270, situate in the Town of Queensbury . . . as shown on the accompanying map."

The document further gives a description of the land and is followed by a reservation clause which states:

> "Reserving, however to the fee owner of the property described in Parcel Nos. 269 & 270 above, and such owner's successors or assigns, the right of using the said property, for the same purpose of access to a public road, and to construct, reconstruct, and maintain a driveway and appurtenances thereon."

Similar appropriations of land took place on the adjacent properties owned by White (Map No. 211, Parcel No. 267) to the south and Tatko (Map No. 33, Parcel No. 44) to the east. The White and Tatko easements were effectively drafted in the same manner and make no explicit declaration granting the landowners the right to cross the State's easements on the neighbor's lands. However, each easement does make reference to Highway Law § 10 as a basis for its authority, stating that:

> "[T]he Commissioner of Transportation deems [each of the subject parcels] necessary to be acquired by appropriation in the name of the People of the

---

1. Claimant's land was approximately 1.82 acres prior to the taking and easements. The State appropriated 6,081 square feet of land under Parcel No. 268 as well as easements covering 683 square feet of land by the southern border under Parcel No. 269 and 1,461 square feet of land by the eastern border under Parcel No. 270.

State of New York for purposes connected with the highway system of the State of New York pursuant to Sections 10 & 30 of the Highway Law and Eminent Domain Procedure Law."

As part of the highway improvement project and pursuant to the language of the easements and takings maps filed, the State installed turning lanes to and from the respective highways to reduce traffic backups and improve overall safety, and created sidewalks abutting the highway. As a result, claimant's curb cut giving access to and from Route 9 was decreased to 24 feet in length. The 50-foot curb cut along Route 149 was removed in its entirety. Instead, the State reestablished access along each highway by providing for shared driveways lying entirely on the respective easements along the southerly and easterly borders of claimant's property. Under the new routes of access—the new driveways—direct access exists on claimant's property so one can exit directly onto Route 9 north solely from claimant's property. However, in order to enter from Route 9 or exit onto Route 9 south, one must cross over the easement on White's property. There is also direct access to claimant's property from Route 149 but one can only exit onto Route 149 by traversing the easement on Tatko's land.

Claimant commenced this eminent domain proceeding seeking damages stemming from the condemnation of its land by the State. After trial, the Court of Claims found that there had been no diminution in the "highest and best use" of the land as commercial strip-plaza property; the court awarded claimant $98,786.63 as direct compensation for the appropriation of its land but denied claimant its request for consequential damages. Claimant appealed the ruling to the extent Court of Claims held that there was no basis to compute consequential damages. The Appellate Division affirmed, holding that the permanent easements in favor of the State over the neighboring properties provided legal access to claimant "regardless of whether defendant deeds that right-of-way to the condemnee" (23 AD3d 737, 738 [3d Dept 2005]). We granted leave and now affirm.

The lower courts both found the subject access to be suitable; suitability is ordinarily a factual determination not reviewable by this Court. However, the Appellate Division's finding of suitability rests on its conclusion that automobiles could enter and leave claimant's property by means of the easements that the State acquired from Tatko and White. Claimant maintains that the State has failed to give it an enforceable legal right in these

easements. Thus, claimant says that it does not have legal access to its premises, and that this undermines its marketable title by diminishing the value of its premium corner location and by creating uncertainty. Thus claimant posits that it is entitled to consequential damages in addition to the direct damages assessed by the Court of Claims. We disagree.

Property owners are entitled to consequential damages when the State's appropriation of their property results in "the loss of their right to enter and exit their property" (*Pollak v State of New York*, 41 NY2d 909, 910 [1977]; *see also Priestly v State of New York*, 23 NY2d 152 [1968]). *Pollak* makes clear that damages must be paid unless the condemnee retains "legal access"— i.e. a legally enforceable right to entry and exit. Damages are to be quantified based on a calculation of the damages at the time of the taking with no effect given to subsequent efforts to reestablish access (*see Wolfe v State of New York*, 22 NY2d 292, 295 [1968]; *Kravec v State of New York*, 40 NY2d 1060, 1062 [1976]). This principle serves as strong incentive for the government to plan carefully and take only what is necessary or otherwise be subject to consequential damages (*see Wolfe*, 22 NY2d at 295-296).

Although legal access is required and damages are to be fixed at the point of the taking, legal access may sometimes exist without a formal deed or conveyance to the claimant. While an explicit conveyance of access rights is generally preferable, the failure to do so does not negate the existence of such a legal right of access. As noted in *Van Valkenburgh v State of New York* (131 AD2d 903, 905 [3d Dept 1987]), Highway Law § 10 (24-d) "does not require a conveyance in order to provide legal access to claimants' property." Furthermore, access is available as a matter of law to abutting landowners, subject only to reasonable police power limitations (*see e.g. Cities Serv. Oil Co. v City of New York*, 5 NY2d 110, 115 [1958] [the City's establishment of a bus stop which interfered with, but did not preclude access to claimant's gas station, was permissible under the municipality's police powers to regulate and control traffic and public transport]).

We thus look to July 13, 1998—the date of the appropriation—to determine whether claimant was left without legal access to its property. On that date, besides appropriating claimant's land and acquiring a permanent easement over its property for purposes of the highway project, the State acquired permanent easements on the adjoining Tatko and White proper-

ties as well. The easements reserved to the owner of each respective property the "right of using the said property, for the same purpose of access to a public road, and to construct, reconstruct, and maintain a driveway and appurtenances thereon." Reading the easements, with any ambiguity construed strictly against the State, each owner was granted use of, as well as the duty to maintain, the respective portions of the driveway, while no explicit right was conveyed to access portions of the driveway on the neighboring lands (*see Clark v State of New York*, 15 NY2d 990, 992 [1965] [holding that easements are to be strictly construed against the State]). Claimant asks that we end our analysis at this point and hold that absent an express conveyance of cross-vehicular access, it is entitled to consequential damages. The inquiry, however, cannot end here.

Although the easements on their face fail to explicitly convey to claimant specific cross-vehicular access rights, implicit legal right of access is enough. Here, the State argues that claimant's legal right of access is assured by Highway Law § 10 (24-d), which provides that the Commissioner of Transportation shall have power:

> "whenever [the] commissioner . . . deems it is necessary as a result of work of construction, reconstruction or maintenance of state highways, to provide for the re-establishment of private access to a public road where such access is destroyed by acquisition of right of way for the project. If such re-establishment of private access requires additional property or if it is necessary that such re-establishment of private access be made to other property, he may acquire such property as may be necessary for the purposes of this subdivision, in the same manner as other property is acquired for state highway purposes pursuant to this chapter, and he may enter into a written agreement with the owner of such private access to convey such property as deemed necessary for the purposes of this subdivision to such owner on terms beneficial to the state."

The State contends that this section gives the Commissioner of Transportation the power to obtain land for reestablishment of access to public roads in situations such as this where highway construction resulted in a derogation of access.

Highway Law § 10 (24-d) vests the Commissioner of Transportation with significant authority to act in the interests of the

People of the State of New York in constructing and improving highways with the power to reestablish access over neighboring parcels to avoid completely or partially landlocking property. The enactment of this statute was not without debate;[2] however, the ultimate decision of the Legislature was that such a concession of power was in the best interest of the State and its constituents (*see* Senate Introducer Mem in Support, Bill Jacket, L 1967, ch 193 ["it is highly desirable for the Superintendent of Public Works to have the power to acquire substitute property for the purpose of re-establishing access to a public road and thus reduce property damage," thus codifying the common-law doctrine of substitute condemnation]). We see no reason to retreat from the intent of the Legislature.

In support of its claim for consequential damages, claimant relies on *Pollak v State of New York*, where we held that the State's appropriation of land from a property owner was compensable with consequential damages (*see* 41 NY2d at 910). In *Pollak*, the State had acquired land under the Grade Crossing Elimination Act (L 1928, ch 678 [now Transportation Law art 10]) in an effort to eradicate the grade intersection of the Long Island Rail Road tracks. As a result of the appropriation, Pollak both lost his ability to conduct business under its prior use as a fertilizer plant and was deprived of legal access to the public road. In that case, the State argued that damages were improper since it had provided an access road for claimant's use—a county road acquired by the State three years after the subject appropriation. This Court held, in affirming that consequential damages were appropriate, that there was no enforceable right for claimant to use the access road, nor was the State obliged to maintain the road. As noted by the Appellate Division in *Pollak*, "[u]nlike what is permitted where land is acquired for State highway purposes (cf. Highway Law, § 10, subd. 24-d), the Grade Crossing Elimination Act contains no specific authorization for

---

2. In opposition to the bill, the State Comptroller wrote:
"[i]t is inequitable to shift the burden of eminent domain from one property owner to another by a procedure which in effect constitutes substitute condemnation . . .
"We recommend disapproval for the reason stated above . . . ; namely that this bill authorizes the appropriation of property of others solely in the interest of financial advantage to the State in providing compensation to private owners of appropriated property" (Dept of Audit and Control Mem in Opposition, Bill Jacket, L 1967, ch 193).

the re-establishment of private access to a public road" (50 AD2d 201, 205 [3d Dept 1975]).

Whereas claimant correctly relies upon *Pollak* for the proposition that failure to provide enforceable legal access in conjunction with the appropriation of land renders the State liable for consequential damages, invocation of Highway Law § 10 (24-d) results in a different outcome under these facts. Here, the State appropriated land from claimant and its neighbors, nearly simultaneously, under the powers of Highway Law § 10, as referenced in the easements. In doing so, the State required under its permanent easements that the use of the appropriated land be to reestablish access and that the roads could only be used for that purpose, and further mandated that the roads must be maintained by the owners for that purpose. Failure to maintain the entry and egress roads would give claimant an enforceable right. Thus, the overall clear intent of the State from the outset was to reestablish public access to this busy retail area. The easements here, which undeniably served the purpose of reestablishing permanent joint driveways for access to the retail outlets, when viewed in reference to the powers of the Commissioner under Highway Law § 10 (24-d), create a legal right of access to claimant.

The language employed in creating the easements, although admittedly sparse, meets the State's threshold under the Highway Law as it reflects a clear intent to reestablish access to the landowners, including claimant, as well as tenants and those patronizing the retail outlets. No formal deed to the condemnee need be conferred to establish legal access rights. The invocation of Highway Law § 10 would otherwise serve no purpose if the right of access was being granted only to the owner of the land it traversed. Referencing Highway Law § 10 in the easements and dictating that the land must be permanently used and maintained as public access roads gives rise to an enforceable legal right of access to claimant and dispenses with any claim for consequential damages.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur; Judge PIGOTT taking no part.

Order affirmed, with costs.